THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Brickyard Plantation Property Owners Association, Inc.,
Appellant,
v.
Jose G. Araujo and Madeline A. Araujo, Respondents.
 
 
 

Appeal From Charleston County
 Thomas L. Hughston, Jr., Circuit Court Judge

Unpublished Opinion No.  2007-UP-065
Submitted February 1, 2007  Filed February 12, 2007

AFFIRMED

 
 
 
John Joseph Dodds, III, of Mt. Pleasant, for Appellant.
Stanley E. Barnett, of Mt. Pleasant, for Respondents.
 
 
 

PER CURIAM:  The Brickyard Plantation Property Owners Association, Inc. (POA), appeals the circuit courts order finding the POA approved Jose and Madeline Araujos application to construct a dock, denying the POAs request for an injunction and attorneys fees, and holding the water body adjacent to the Araujos property is legally navigable.  We affirm.[1]  
I.
In February 2002, the Araujos purchased property adjacent to a small body of water in a development called Brickyard Plantation.  The property was sold subject to the Declaration of Covenants and Restrictions for Brickyard Plantation (Covenants).  
The Araujos main purpose for purchasing this property was to construct a dock that would allow them to use the adjacent water body.  Under section 7.2 of the Covenants, any structural improvement, including docks, must be approved by the Architectural Review Board of the POA (ARB).  Section 7.2 also provides:

In the event the ARB fails to approve or disapprove any request within thirty (30) days after complete written plans and specifications have been submitted to it, the same shall be deemed approved, and this article shall be deemed to have been fully complied with, provided, however, that no such failure to act shall be deemed an approval of any matters specifically prohibited by any other provisions of this Declaration.

In September 2003, the Araujos submitted a dock permit application to the Office of Ocean and Coastal Resource Management (OCRM), which approved the permit.  Before formal approval from OCRM, however, the POA learned of the Araujos desire to build a dock and requested the Araujos send it information on the proposed dock.  The POA also sent a letter to OCRM (and a copy to the Araujos) asserting that no docks were allowed on lakes, marshes or lagoons without permission of the POA and ARB Board of Directors, and that the POA decided not to allow any docks on ponds, marshes, lakes or lagoons under its control. 
In October 2003, in response to the POAs request, the Araujos contractor faxed a copy of the OCRM permit application and drawings to Stephen Wright, the President of the POA.  The contractor included a letter indicating the Aruajos would formally request approval from the home owners association after an OCRM permit was secured.  In November 2003, prior to a formal request by the Aruajos, the POA informed the Araujos by letter that their submittal was reviewed by the POA board and a decision was made to deny your request based on . . . the Covenants and Restrictions.  This letter was not based on any decision or action made by the ARB; however,the letter further stated that [t]he POA and ARB Board of Directors have made a decision not to allow any dock to be constructed on the ponds, marshes, lakes or lagoons; they are only permitted on the deep water of the Horlbeck Creek.  
By permit dated January 21, 2004, OCRM approved the Araujos dock.[2]  
On January 20, 2004, the Araujos attended a POA board meeting to submit the first formal request for approval by the ARB of the dock they planned to construct.[3]  At the meeting, the Araujos provided the POA property manageran agent of the POA and the ARBwith a $50 application fee and a letter addressed to the POA regarding the construction of their dock.  The letter expressly provided: This is a request for ARB and or [sic] Brickyard Board of Elected Representatives for approval of said dock below.  The property manager placed the materials in the Araujos file.  Thereafter, via an undated letter mailed around February 11, 2004, the POA informed the Araujos their dock would not be allowed pursuant to the Covenants.  
On March 5, 2004, Mrs. Araujo visited the POAs management office to examine her file.  Mrs. Araujo noticed the information submitted at the January board meeting, including the $50 application fee, were still in their file and had not been given to the ARB.  Mrs. Araujo asked the property manager to submit the materials to the ARB at their next meeting and write a note explaining the events surrounding the Araujos submittal.  
On March 11, 2004, the Araujos materials were submitted to the ARB.  The ARB did not approve the Araujos dock based on sections 7.36 and 7.44 of the Covenants.  By a letter dated March 15, 2004, the ARB denied the Araujos request to construct a dock.  
Thereafter, the Araujos began construction of their dock, believing the OCRM and the Covenants authorized it.  The POA filed this action seeking an injunction requiring the removal of the Araujos dock and a monetary fine.  The circuit court held the POA approved the Araujos dock by default under section 7.2 of the Covenants, and the Araujos could construct and maintain their dock.  In addition, the circuit court held the water body adjacent to the Araujos property was legally navigable.  The POA filed a motion to alter or amend judgment.  The circuit court modified its original order but did not alter the overall findings in the case.  This appeal follows.   
II.
An action to enforce restrictive covenants by injunction is in equity. Seabrook Island Prop. Owners Assn v. Marshland Trust, Inc., 358 S.C. 655, 661, 596 S.E.2d 380, 383 (Ct. App. 2004).  On an appeal in an action in equity, tried by the judge alone, without a reference, the appellate court has jurisdiction to find facts in accordance with its views of the preponderance of the evidence. 
Campbell v. Carr, 361 S.C. 258, 263, 603 S.E.2d 625, 627 (Ct. App. 2004).  Nevertheless, this broad scope of review does not require the appellate court to ignore the findings below when the trial court was in a better position to evaluate the credibility of the witnesses. 
Seabrook Island Prop. Owners Assn, 358 S.C. at 661, 596 S.E.2d at 383.      
III.
The POA argues the circuit court erred in holding the ARB approved the Araujos dock by default.  Specifically, the POA contends the court erred in finding the Araujos filed an application to construct a dock with the ARB on January 20, 2004 and misinterpreted the relevant Covenants.  We disagree.
A.  Application to Construct Dock
The record shows that the Araujos appeared at the January 20, 2004 POA board meeting and submitted several forms regarding the construction of their dock, an application fee, and a letter addressed to the POA.  The minutes from the January POA board meeting provide that the Araujos addressed the board concerning their dock application and presented their dock request.  The letter that accompanied the Araujos submittal provides: This is a request for ARB and or [sic] Brickyard Board of Elected Representatives for approval to construct a dock.  In addition, Mrs. Araujo testified that she informed the POA board that she wanted the materials submitted to the ARB per covenants and restrictions.  Mr. Araujo also testified that he considered the materials submitted at the January POA board meeting to be an application for approval to construct a dock.  This evidence supports finding the Araujos submitted a complete application to the POA and the ARB on January 20, 2004.  Moreover, where there is discrepancy in testimony, we may defer to the circuit courts findings.  See Seabrook Island Prop. Owners Assn, 358 S.C. at 661, 596 S.E.2d at 383. 
B.  Interpretation of Covenants        
Under section 7.2 of the Covenants, once a party submits an application requesting to construct a dock, the application is automatically approved if the ARB fails to approve or disapprove the request within thirty days.  This approval by default, however, does not apply for any matters specifically prohibited by any other provisions of [the Covenants].  In this case, the ARB notified the Araujos that their request was denied on, at the earliest, March 15, 2004, which is well beyond the thirty day deadline for an application submitted on January 20, 2004.   
The POA contends sections 7.36(c) and 7.44 of the Covenants specifically prohibit the Araujos dock.  Section 7.36(c) provides that [n]o dock, pier, or wharf shall be constructed on any lagoon and no dock, pier, or wharf shall be constructed on the marsh without approval of the Developer or ARB and the Association.[4]  Section 7.44 provides, [n]o docks, landings, or other structures may be located in or adjacent to any lake or lagoon without the prior written consent of the Developer.  The Covenants, therefore, expressly authorize the construction of a dock when approved by the appropriate person or board, i.e., the building of a dock is not a matter[] specifically prohibited by any other provisions of [the Covenants].
As voluntary contracts, restrictive covenants will be enforced unless they are indefinite or contravene public policy. 
Seabrook Island Prop. Owners Assoc., 358 S.C. at 661, 596 S.E.2d at 383.  The language of a restrictive covenant is to be construed according to the plain and ordinary meaning attributed to it at the time of execution.  Hardy v. Aiken, 369 S.C. 160, __, 631 S.E.2d 539, 542 (2006).  Restrictive covenants are contractual in nature, so that the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document.  S.C. Dept of Natural Res. v. Town of McClellanville, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001) (quoting Taylor v. Lindsey, 332 S.C. 1, 4-5, 498 S.E.2d 862, 863-64 (1998)).  It is still the settled rule in this jurisdiction that restrictions as to the use of real estate should be strictly construed and all doubts resolved in favor of free use of the property, subject, however, to the provision that this rule of strict construction should not be applied so as to defeat the plain and obvious purpose of the instrument.  Id.  
We find neither section 7.36 nor section 7.44 prohibits construction of the Araujos dock.  Both sections expressly allow for construction upon approval by the ARB.  At best, the various covenants are ambiguous, which requires a resolution in line with the free use of the property.  Because the construction of a dock is not in all cases specifically prohibited by either section, the application was automatically approved under section 7.2 as the ARB failed to act within thirty days of submission. 
C.     Injunction and Attorneys Fees 
Because we find the circuit court correctly held the ARB approved the Araujos dock by default, we also hold the circuit court did not err in failing to grant an injunction on the Araujos dock.  Likewise, the circuit court correctly declined to award the POA attorneys fees.
Section 8.1 of the Covenants authorizes the POA to enforce the Covenants.  Section 8.9 allows the POA to recover attorneys fees where an attorney is employed to bring an action for breach of the Covenants.  As discussed above, we find the Araujos did not breach the Covenants; therefore, the POA is not entitled to recover attorneys fees.  
IV.
The POA argues the circuit court erred in holding the water body at issue was legally navigable and a public navigable water.  At trial, the POA alleged that lots adjacent to tidal ponds were subject to different restrictions than lots adjacent to Horlbeck Creek.  To refute this contention, the Araujos argued and the circuit court found that the tidal pond adjacent to the Araujos property is legally navigable and a public navigable water.  Because we base our holding on the language in the restrictive covenants, we find the issue of navigability is not necessary for the resolution of the appeal.  Accordingly, we will not address this issue.  See Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn, 348 S.C. 58, 76 n.36, 558 S.E.2d 902, 911 n.36 (Ct. App. 2001) (This court will not issue advisory opinions that have no practical effect on the outcome.).
V.
For the reasons set forth herein, the decision of the circuit court is

AFFIRMED. 
ANDERSON, KITTREDGE and SHORT, JJ., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  OCRM issued the Araujos permit despite the POAs letter because the POA failed to demonstrate ownership of the water body.  
[3]  It is uncontested that the January 20, 2004 application was the first formal request by the Araujos for approval of the dock.  There is no contention by the POA that the activity in late 2003 was either an application by the Araujos or a formal rejection by the POA or ARB.  In the trial court and on appeal, the focus of the POA is on the Covenants in the context of the January 20, 2004 application.
[4]  The inclusion of the Developer has no relevance to this case.  The Developer was only authorized to grant approval before it sold a certain number of properties, at which time all approval rights transferred to the ARB pursuant to section 7.2 of the Covenants.  At all times relevant for this action, the ARB had the right of approval for the construction of a dock.